**Dan MORALES, Attorney General of Texas, Appellant,**

v.

**John H. ELLEN, Jr., Allen Coco, Jr., in his official capacity of Director of Personnel for the City of Odessa, Texas, James Jenkins, in his capacity of Chief of Police for the City of Odessa, Texas, Appellees.**

No. 08-92-00010-CV.

Court of Appeals of Texas, El Paso.

July 22, 1992.

Rehearing Overruled Sept. 23, 1992.

Brooks W. Conover, III, Asst. Atty. Gen., Austin, for appellant.

Joel V. Roberts, City Atty., Elizabeth Lutton, Sr. Asst. City Atty., Odessa, John P. Calhoun, Ginnings, Birkelbach, Keith & Delgado, El Paso, A.J. Pope, Midland, for appellees.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

This appeal concerns application of the Texas Open Records Act, Tex.Rev.Civ.Stat. Ann. art. 6252–17a (Vernon Pamph.1992)

(TORA or the Act)[1] where a private citizen requested investigative records concerning allegations of sexual harassment against a public official. This case requires us to accomplish the delicate task of balancing the public's entitlement to "full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees"[2] against the privacy rights of harassment victims required, as a condition of their employment, to give evidence about intimate and embarrassing events. Our decision here is complicated even more because the governmental body involved did not inform these witness-victims of the proposed disclosure, nor of their right to request exemption under the Open Records Act. The first that these witnesses will learn of the proposed disclosure, apparently, is the publication of their names and the facts they disclosed in a local newspaper. We decline to order this, and affirm the decision of the trial court.

## FACTS

The City of Odessa Police Department has an Internal Affairs Division (IAD) which investigates both external and internal complaints against police officers. When a complaint is made, IAD tries to locate all possible witnesses and interview them. IAD tape records all interviews and also puts the information gleaned from witnesses in writing, usually in affidavit form. Although cooperation with an IAD investigation by private citizens is purely voluntary, employees of the police department *must* respond fully to any request by the IAD for information.[3]

The Odessa IAD investigated in April 1989, allegations of sexual harassment and related misconduct against John Ellen, then a lieutenant with the Odessa Police Department and supervisor of its communications department. Ultimately, a police board of inquiry sustained the allegations, and Lieutenant Ellen resigned after the board voted to recommend his termination. Sometime later, the city of Alpine, Texas hired him as chief of police.

On August 16, 1991, Jack McNamara, publisher and editor of the NIMBY[4] News, a quarterly tabloid headquartered in Alpine, delivered an Open Records request to the City of Odessa seeking records involving any investigation of Lieutenant Ellen and his resignation, and records about Ellen responsive to any background check, request for recommendation or other correspondence from the city of Alpine.[5]

On October 31, 1991, the *Alpine Avalanche,* a local newspaper, ran Mr. Ellen's letter to the editor entitled, "Police chief responds to recent allegations," in which he publicly addressed the circumstances leading to his resignation from the Odessa Police Department, explained his actions and apologized for his past mistakes.

The City of Odessa initially declined to release its records to Mr. McNamara, and timely requested an open records decision from the Texas Attorney General, as required by the Act. Tex.Rev.Civ.Stat. Ann. art. 6252–17a(7)(a). Ellen did not participate in this administrative process. The City, moreover, did not inform any other witness involved of the request. The Attorney General ruled that all records concerning the investigation must be released. The City elected to follow this ruling, and did not file a challenge to the AG's decision in Travis County, as permitted under the TORA. Tex.Rev.Civ.Stat. Ann. art. 6252–17a(8)(a). Mr. Ellen, however, did file a suit for declaratory judgment requesting

---

1. All statutory references are to the Texas Open Records Act unless otherwise noted.

2. Tex.Rev.Civ.Stat.Ann. art. 6252–17a(1).

3. Odessa Police Department Code of Conduct and Discipline Order 500 requires that employees respond to any request for information by the IAD. If an employee refuses, he or she is given a direct order to cooperate. If the employee does not comply, he or she is subject to discipline for insubordination, up to and including termination.

4. "Not in My Backyard"

5. There are no records responsive to the second part of Mr. McNamara's request. This appeal, therefore, concerns only that portion involving the investigation, disciplinary action and resignation.

the district court rule that the records were exempt from disclosure, naming the City personnel director, chief of police, and Mr. McNamara as defendants.[6] The Attorney General intervened with a plea to the jurisdiction, special exceptions and a request that mandamus issue requiring release of all the information requested.

After hearing, the trial court entered its order finding that (1) it had jurisdiction to consider the case; (2) two documents must be disclosed, specifically a twelve page affidavit by Mr. Ellen, addressing the various charges against him and three pages of findings of the police board of inquiry; (3) that the names of witnesses contained in the two documents should be deleted, as their disclosure would constitute an invasion of the privacy of those named individuals and no legitimate public interest would be served by their disclosure; (4) the rest of the investigative file should be withheld as falling within the privacy, personnel file and law enforcement exemptions to the TORA; and (5) no attorneys' fees should be awarded to any party.

The Attorney General has appealed this decision, urging that the TORA mandates full disclosure of the entire investigative file, including the names and statements of all witnesses.

## JURISDICTION

As a threshold matter, the Attorney General argues that the trial court lacked jurisdiction to hear this case, as Mr. Ellen did not exhaust administrative remedies and, as a private individual, lacks standing to raise the exceptions from disclosure relied upon by the trial court. We disagree.

■ John Ellen filed his petition for declaratory judgment in Ector County, following the City's decision to abide by the Attorney General's decision and release all the investigative records requested. Under the TORA, the legislature gave Ellen the option of participating in the proceedings before the attorney general, but did not require that he do so:

A person whose interests may be implicated or any other person *may* submit in writing to the attorney general the person's reasons for withholding or releasing the information. Section 7(c). [Emphasis added].

This language, clearly permissive, does not obligate the individuals with a privacy interest to seek relief from the attorney general before claiming a privacy interest in the courts. *See City of Amarillo v. Hancock*, 150 Tex. 231, 239 S.W.2d 788, 790 (1951); *McFadden v. Gideon*, 639 S.W.2d 43, 44 (Tex.App.—El Paso 1982, writ ref'd n.r.e.). The trial court, thus, had jurisdiction to hear Mr. Ellen's suit raising violation of constitutional rights. Although the Act requires that a governmental body seeking to avoid disclosure must file a suit for declaratory judgment or mandamus action in Travis County, there is no such requirement imposed upon a private citizen seeking review of an attorney general's decision. We find that the Ector County District Court had jurisdiction to decide the declaratory judgment filed by Mr. Ellen raising constitutional privacy issues. We also find he had standing to raise privacy issues. We thus reach the merits of the trial court's decision.

## COMPETING INTERESTS

Sexual harassment in the workplace is a problem pervasive, insidious and elusive of easy cure. By its nature, it involves the most embarrassing and intimate of details. By its nature, it involves persons in positions of power (usually men) doing and saying offensive things, usually to women under their dominion. These factors make coming forward with complaints of sexual harassment a stressful and onerous task. Public policy, therefore, dictates that we treat sexual harassment investigations, victims and witnesses so as to promote full disclosure of improper conduct and prompt resolution of valid complaints.

## PRIVACY EXEMPTIONS

■ TORA Sections 3(a)(1) and 3(a)(2) both protect the privacy interests of indi-

---

6. Mr. McNamara was later voluntarily non-suit- ed.

viduals subject to invasion by disclosure of information held by governmental bodies. Section 3(a)(1), commonly called the "privacy exception," exempts from disclosure:

[I]nformation deemed confidential by law, either Constitutional, statutory, or by judicial decision.

Section 3(a)(2), commonly called the "personnel file exception," exempts from disclosure:

[I]nformation in personnel files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy....

The trial court here held that these provisions of the TORA applied to except certain materials from disclosure. We find, however, no evidence that the relevant material requested is part of Mr. Ellen's personnel file. It is, instead, part of an investigative file apparently maintained in a separate department. The personnel file exception to the TORA is not applicable to the material here, and to the extent the trial court relied upon that section of the Act in withholding information from disclosure, he was in error.

We now turn to the question of whether the privacy exception to the Act justifies the judgment of the trial court.

■ In *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668, 680 (Tex.1976), the Texas Supreme Court, reviewing a TORA request for workers' compensation claims filed with the Industrial Accident Board, examined the competing interests of the public's right to know versus the individual's constitutional right to privacy in certain protected spheres. The Court there held that a protected privacy interest under the TORA must meet the criteria for invasion of privacy under a tort analysis. That is, disclosure of governmental information should be refused where it constitutes "an unwarranted invasion of the right of privacy constitut[ing] a legal injury for which a remedy will be granted." *Industrial Foundation*, 540 S.W.2d at 682, quoting *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex.1973). Specifically, the individual seeking to prevent disclosure of records for

privacy reasons must meet a twofold test, that: (1) the information contains highly intimate or embarrassing facts, the publication of which would be highly objectionable to a reasonable person; and (2) the information is not of legitimate public concern.

■ If the records requested meet the first test, it is presumed that the information is not of legitimate public concern unless the requestor can show that under the particular circumstances of the case, the public has a legitimate interest in the information not withstanding its private nature. *Industrial Foundation*, 540 S.W.2d at 682, 685.

■ In a case further interpreting privacy exemptions to the TORA, the Austin Court of Appeals determined whether disclosing the names of candidates for the presidency of Texas A & M University was an unwarranted invasion of privacy. *Hubert v. Harte–Hanks Texas Newspapers, Inc.*, 652 S.W.2d 546, 551 (Tex.App.—Austin 1983, writ ref'd n.r.e.). There, the Court held the publication of candidates' names were not the type of information so intimate or embarrassing as to trigger the *Industrial Foundation* presumption of exemption. The Austin Court observed that the sensitive information held exempt from disclosure in *Industrial Foundation* involved claims of such highly personal matters as:

[S]exual assaults, victims of mental or physical abuse in the workplace, *illegitimate children, psychiatric patients, persons who attempted suicide, or persons suffering injuries to sexual organs. Plainly, this character of intimate or embarrassing information can be distinguished from the material sought in the present appeal.* *Hubert*, 652 S.W.2d at 551. [Emphasis added].

The character of some of the information sought here, in contrast to that sought in *Hubert*, is exactly the sort held excluded from disclosure under the privacy exemption. It involves names of witnesses required to give information under threat of discipline, their statements regarding highly embarrassing, offensive and unprofes-

sional conduct in the workplace, their dating and sexual relationships, the state of marriages and other highly personal material.

■ The Attorney General argues, relying upon his own Open Records Decision in this case, that the victim's names and affidavits, although "contain[ing] information of a highly intimate or embarrassing nature, ..." nevertheless "because the information involves a prominent former public employee and allegations of sexual harassment in a public workplace, ..." must be disclosed. The Attorney General relies upon a similar decision, moreover, where he stated that "[w]hile not meaning in any way to downplay the seriousness of these charges [of sexual harassment], we conclude that they fall far short of alleging the kind of misconduct that must occur to invoke common law privacy...." Tex. Att'y Gen. ORD–579 (1990). Although acknowledging that attorney general's opinions are entitled to great weight, *Heard v. Houston Post Company*, 684 S.W.2d 210, 212 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), we disagree with this characterization of the information at issue here and cannot condone the outcome the Attorney General urges. We conclude that the names of witnesses and their detailed affidavits are exactly the sort of information that is protected under Section 3(a)(1) of the Act.

Clearly, if disclosed and published by a private source, these witnesses would possess a cause of action for invasion of privacy. Moreover, sexual assault and mental abuse in the workplace are two types of conduct specifically listed by the *Hubert* Court as protected by the privacy exception. Under the rationale of *Industrial Foundation* and *Hubert*, therefore, the names and the details of witnesses' individual statements (which would probably disclose their identities to any reasonably diligent investigator) were presumptively exempt from disclosure. We, therefore, next reach the question of whether some legitimate public interest would be served by this disclosure.

■ Here, all the pertinent information regarding the charges leading to Mr. Ellen's resignation were included in either his responsive affidavit or the conclusions of the board of inquiry, both of which are public. The individual affidavits of witnesses, given under threat of internal discipline, add nothing real to the public concern with this investigation. We conclude that the public does not possess a legitimate interest in the identities of the individual witnesses, nor the details of their personal statements beyond what is contained in the documents that have been ordered released.

■ Mr. Ellen, however, stands in a different position. He was at the time of this investigation, a supervisor with the Odessa Police Department; he is now chief of police in Alpine. The citizens of both cities possess a legitimate interest in full disclosure of the facts behind his resignation from the Odessa Police Department and his hiring by the city of Alpine. Moreover, by publishing a detailed letter explaining his actions and state of mind at the time of his forced resignation, he has waived any privacy interest he may have had in those contents of the investigative file which are addressed in his letter. We, therefore, conclude that the trial court properly ordered Mr. Ellen's affidavit and the board's recommendation disclosed. We also conclude that the witnesses' identities and individual statements were properly withheld under Section 3(a)(1) of the Act.

## LAW ENFORCEMENT EXEMPTION

■ The third exemption to disclosure under TORA upon which the trial court relied was Section 3(a)(8), the law enforcement exemption, which allows governmental units to refuse disclosure where:

[R]ecords of law enforcement agencies and prosecutors that deal with the detection, investigation, and prosecution of crime and the internal records and notations of such law enforcement agencies and prosecutors which are maintained for internal use in matters relating to law enforcement and prosecution;

. . . .

**526**

The purpose of this exception is to prevent law enforcement and crime prevention techniques from being readily available to the public at large. Tex.Att'y Gen. ORD–133 (1976); Tex.Att'y Gen. 127 (1976). This section protects the type of information that, if revealed, might endanger the life or physical safety of law enforcement personnel, or interfere with law enforcement and crime prevention. Here, there was evidence that no criminal investigation or prosecution resulted from the investigation. The law enforcement exemption to disclosure was, therefore, inapplicable in this case, and the trial court erred in relying upon it. Any error, however, was harmless, as the decision of the trial court is sustainable under Section 3(a)(1).

### ATTORNEY'S FEES

 Finally, the Attorney General challenges the trial court's ruling that no attorney's fees be awarded in this case. Attorney's fees are recoverable, at the trial court's discretion, under the TORA, which provides:

> [T]he court may assess costs of litigation and reasonable attorney's fees incurred by a plaintiff or defendant who substantially prevails. In exercising its discretion, the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith. Section 8(b)

Generally, the trial court enjoys wide discretion in awarding attorney's fees, and its decision will not be overturned on appeal absent abuse of that discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455–56 (Tex.1985). Here, the Attorney General argues that the City of Odessa did not pursue this litigation in good faith because relevant attorney general's opinions have previously determined similar information to be public. This argument fails, however, because it was Mr. Ellen, not the City, who filed the lawsuit challenging the Attorney General's opinion requiring disclosure. Moreover, in light of the trial court's decision and our affirmance here, we cannot say that the Attorney General has "substantially prevailed." Attorney's fees will not be awarded in a TORA case where both parties have legitimate interests. *Houston Independent School District v. Houston Chronicle Publishing Company*, 798 S.W.2d 580, 590 (Tex.App.—Houston [1st Dist.] 1990, writ denied). There are clearly legitimate competing interests on all sides of this case. We cannot say that, under these circumstances, the trial court abused its discretion.

### CONCLUSION

To order complete disclosure of these records would work a serious injustice upon witnesses ordered to cooperate with an Internal Affairs investigation under threat of severe discipline, even termination. The records requested contain highly intimate, embarrassing revelations about persons required to cooperate with an investigation by their employer. These witnesses were never informed of the request that these records be made public; they have, thus, had no opportunity to assert privacy interests on their own behalf. To disclose their names and the details of their statements would send a most unfortunate message to all public employees in Texas: that they complain about sexual harassment in their workplace, or cooperate in the investigation of such a complaint, only at risk of embarrassing and offensive publicity. While this may occasionally be a necessary evil in the enforcement of prohibitions against sexual harassment, we do not believe it is warranted here and decline to order the disclosure of documents which would have such a chilling effect.

The public interest in revealing the contents of this investigation, which uncovered serious misconduct by a high-ranking police officer leading to his resignation, and who is now chief of police in another town, is great. It does not, however, outweigh the right to privacy of witnesses compelled to present evidence to investigators, particularly where they had no notice or opportunity to be heard on this issue.

The trial court's judgment here reached an equitable balance between two compelling interests: The public will learn the substance of the complaints against Mr.

Ellen (who had notice and opportunity to be heard on the proposed disclosure); while the identities of the individual witnesses will be protected. This result will allow the citizens of Alpine to make informed decisions about their chief of police and the elected officials who hired him. It will allow the citizens of Odessa to assess their police department and its internal affairs procedures. It also will protect privacy rights, and in this Court's view, encourage the frank and prompt disclosure of sexual harassment and other misconduct in the workplace.

We affirm the judgment of the trial court.

BARAJAS, J., not participating.