# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00411-CV

**The Boeing Company, Appellant**

**v.**

**Greg Abbott, Attorney General of Texas, and The Greater Kelly Development Authority n/k/a The Port Authority of San Antonio, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-05-004504, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

---

## C O N C U R R I N G   O P I N I O N

For substantially the same reasons identified in its opinion, I agree with the majority that the evidence did not *conclusively* establish (as Boeing acknowledges it must in order for the company to prevail on appeal) that the information Boeing seeks to withhold is a trade secret. For similar reasons, but not those advanced by the majority, I likewise join in the judgment that Boeing is not entitled to have the information withheld under the exception to mandatory disclosure provided in section 552.104 of the Public Information Act (PIA). *See* Tex. Gov't Code Ann. § 552.104 (West 2004).

Section 552.104 excepts from mandatory disclosure "information that, if released, would give advantage to a competitor or bidder." *Id.* § 552.104(a); *see id.* § 552.104(b) (providing that this exception applies notwithstanding section 552.022's general requirement that the so-called "core" public information listed within that section, including "information in [a] . . . contract

relating to the receipt or expenditure of public or other funds by a governmental body," be disclosed unless "expressly confidential under other law"). Boeing insists that release of the information at issue—rental rates, allocated shares of common maintenance costs, financial incentives, minimum insurance requirements, and liquidated damages provisions under its sublease with the Port[1]—would "give advantage" to its "competitors" who, like Boeing, pursue large federal government contracts to service and overhaul military aircraft.[2] To support this claim, Boeing presented evidence that the information would enable its rivals to (1) calculate or at least estimate Boeing's costs under the sublease through its 2018 expiration, (2) attempt to negotiate lower-cost or more lucrative arrangements to secure sites for their own operations,[3] (3) which, if successful, would provide them a relative advantage with respect to a key component of a company's "overhead rate" (though, as

---

[1] As Boeing emphasizes, these terms compose a relatively small portion of the entire sublease agreement, which encompasses approximately 80 pages, counting appendices and exhibits.

The district court's judgment withheld certain other portions of the sublease agreement pursuant to homeland security and anti-terrorism protections. *See* 6 U.S.C.A. § 133 (West 2007) (providing that critical infrastructure information provided to state or local government agencies shall not be made available pursuant to state or local laws requiring disclosure of information or records and may only be disclosed with the written consent of the person or entity submitting the information); Tex. Gov't Code Ann. § 418.181 (West 2005) ("Those documents or portions of documents in the possession of a governmental entity are confidential if they identify the technical details of particular vulnerabilities of critical infrastructure to an act of terrorism."). Those portions of the sublease are not at issue on appeal.

[2] Boeing does not appear to assert that the information would "give advantage" to rival "bidders."

[3] E.g., one of the several former military facilities around the nation that, like Kelly Air Force base, have been closed in recent years and to which local authorities may be similarly eager to lure a large employer to aid economic development.

2

the majority notes, not the exclusive component of the overhead rate[4]) in bidding for future federal contracts, (4) which would be especially beneficial in winning these contracts because competition centers on bid price and that wages and certain other key bid components, though not all,[5] are fixed and standardized. Given the contingencies present in Boeing's theory, and without additional evidence, I would hold that the evidence again falls short of *conclusively* demonstrating that disclosure of the information "*would* give advantage" to Boeing's competitors, as required by section 552.104.

The majority, addressing a question of first impression, instead focuses on the district court's findings or conclusions that Boeing lacked "standing" to invoke section 552.104. To the extent the district court and the parties intended "standing" merely to refer to whether Boeing has a statutory right to the relief it seeks, as the majority suggests, or a view that section 552.104 defines the "legally protected interest" required for standing in a jurisdictional sense,[6] the district court's determination that Boeing lacked "standing" would merely follow from the above analysis regarding the merits of Boeing's section 552.104 claim. But the majority goes much further, reasoning that even where section 552.104 would shield information from disclosure, a private party would never have the right to assert that exception, and further implying that no private party would have standing

---

[4] Boeing's witness, David Bouse, acknowledged that other components of the overhead rate include utilities, certain high-level management salaries, and some services.

[5] E.g., general and administrative expenses, like funding for pension plans.

[6] *See, e.g.*, *Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919, 925-26 (Tex. App.—Austin 2010, no pet.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Hendee v. Dewhurst*, 228 S.W.3d 354, 368-69 (Tex. App.—Austin 2007, pet. denied) (illustrating that jurisdictional standing inquiry can sometimes overlap the merits).

(in either sense) to assert any PIA exception if the governmental body controlling the information would not be prohibited from disclosing it voluntarily. These views overlook several key features of the PIA's text and structure.

The Attorney General maintains that Boeing lacks "standing" to invoke section 552.104 because that exception is intended to protect the purchasing interests of a governmental body when conducting competitive bidding or similar procurement processes, not those of a private party like Boeing that competes in such processes. If such a limitation exists, it cannot be found in the text of section 552.104. Section 552.104 is addressed simply to "information that, if released, would give advantage to a competitor or bidder" without elaborating as to whether it is intended to protect the interests of "competitors" and "bidders," a governmental body whose contract or business is being sought by "competitors" or "bidders," or both. *See id.* § 552.104. On its face, section 552.104 would seem to implicate the interests of both. In fact, the Attorney General has tacitly acknowledged as much in his own prior open records decisions. While opining on numerous occasions that section 552.104 protects the purchasing interests of governmental bodies,[7] the Attorney General has also held that "competitors" themselves, at least when they are other governmental bodies, may invoke section 552.104.[8]

That section 552.104 serves in part to protect the interests of private "competitors" and "bidders," and may be raised by them, is further confirmed by other PIA provisions. Under PIA subchapter G, a governmental body must generally assert and present argument to the

---

[7] *See infra* at 7-8 & n.9.

[8] *See* Tex. Att'y Gen. ORD-593 (1991), 2; *accord* Tex. Att'y Gen. OR2012-632, 2.

4

Attorney General concerning any potentially applicable subchapter C exception in order to preserve that ground for withholding information. *See id.* §§ 552.301-.303 (West 2004 & Supp. 2011). Compliance with these administrative procedural requirements, moreover, is ordinarily a prerequisite to a governmental body's right to challenge the Attorney General's determination regarding that exception through the suit authorized by PIA sections 552.324 and .325. *See id.* § 552.324-.326 (West 2004 & Supp. 2011). However, under PIA section 552.305, the Legislature has provided that "[i]n a case in which information is requested under this chapter and a person's privacy or property interests may be involved," the governmental body need not claim or brief specific exceptions in order to preserve them, although it may do so if it wishes. *Id.* § 552.305(a), (c) (West 2004). In lieu of requiring advocacy by the governmental body, the Legislature afforded "[a] person whose interests may be involved under Subsection (a), or any other person," the opportunity to "submit in writing to the attorney general the person's reasons why the information should be withheld or released." *Id.* § 552.305(b) (West 2004). This exception reflects legislative recognition that third parties with interests implicated by a request would often have the most at stake and be in the best position to argue that the information is protected from disclosure. Consistent with and parallel to these administrative procedures applicable when "a person's privacy or property interests may be involved," the Legislature provided that a governmental body need not raise "exceptions . . . involving the property or privacy interests of another person" before the Attorney General as a prerequisite to raising them in a suit for judicial review. *Id.* § 552.326 (West 2004).

Pivotal to this case, in section 552.305, the Legislature enumerated several examples of "a case in which information is requested under this chapter and a person's privacy or property

5

interests may be involved," so as to be subject to these exceptions and special procedures. These examples "include a case under Section 552.101, *552.104*, 552.110, or 552.114." *Id.* § 552.305(a) (emphasis added).

These features of the PIA reflect legislative recognition that disclosure of information protected by section 552.104 would implicate the interests of the third parties whose "competitors" or rival "bidders" would be "advantaged," even to the extent that those third parties would or should be the primary advocates of the exception's applicability before the Attorney General. Furthermore, the Legislature has provided such third parties a remedy if the Attorney General makes an erroneous adverse decision on that issue. As the Attorney General seems to acknowledge, PIA section 552.325, on which Boeing relies, waives sovereign immunity to permit not only governmental bodies, but also private parties, to sue the Attorney General to challenge his administrative determinations regarding the applicability of subchapter C exceptions and whether requested information must be disclosed. *See id.* § 552.325 (West Supp. 2011) ("A governmental body, officer for public information, *or other person or entity* that files a suit seeking to withhold information from a requestor . . . .") (emphasis added); *see also id.* § 552.353(c) (West Supp. 2011) (referencing a "person or entity" filing "a cause of action seeking relief from compliance with the decision of the attorney general, as provided by Section 552.325"); Attorney General of Texas, *Public Information 2012 Handbook* 60 (observing that section 552.325 "recognizes the legal interests of third parties and their right to sue the attorney general to challenge a ruling that information must be released"). Considering this statutory scheme, I would hold that the Legislature intended private parties whose "competitors" or rival "bidders" would be "advantaged" by disclosure to have standing or the right to protect their interest

in the information protected by section 552.104 through the judicial remedy provided in section 552.325.

In contending otherwise, the Attorney General insists that we must or should defer to numerous prior open records decisions and letter rulings stating that section 552.104 protects governmental bodies' purchasing interests rather than the interests of private parties. Like the majority, I recognize that courts are to give "due consideration" to the Attorney General's determinations, "especially in cases involving the [PIA]." *Rainbow Grp. Ltd. v. Texas Emp't Comm'n*, 897 S.W.2d 946, 949 (Tex. App.—Austin 1995, writ denied); *accord Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 121 (Tex. App.—Austin 2003, no pet.). But, as with other administrative constructions of statutes, these principles of deference do not apply where, as here, the Attorney General's proposed construction is inconsistent with the statutory language. *See City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010); *see also Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 629 (Tex. 2011). In any event, the reasoning in these determinations is unpersuasive.

Many of these determinations merely state a conclusion without analysis beyond citing earlier determinations that say the same thing—again, without analysis.[9] The roots of those determinations appear to be two concepts referenced in early decisions. The first concept is that section 552.104 is intended to protect the purchasing interests of governmental bodies, an observation that in itself does not foreclose legislative intent also to protect the interest of third parties. *See, e.g.*, Tex. Att'y Gen. ORD-541 (1990), 4 (observing that the "*principal* purpose

---

[9] *See, e.g.*, Tex. Att'y Gen. OR2012-00264; Tex. Att'y Gen. OR2011-00755; Tex. Att'y Gen. OR2011-00632; Tex. Att'y Gen. OR2010-00582.

7

of [what is now the section 552.104] exception is to protect a governmental body's purchasing interests by preventing a competitor or bidder from gaining an unfair advantage over other competitors or bidders") (emphasis added). The other is that section 552.104 does not protect the interests of third parties because the exception does not, in itself, bar the governmental body from voluntarily disclosing the information if it wishes to do so. *See* Tex. Att'y Gen. ORD-592, 8 (1991). This same reasoning is also the linchpin of the majority's analysis.

As the Attorney General and majority emphasize, a governmental body may choose to disclose its information voluntarily so long as the disclosure is not "expressly prohibited by law or the information is confidential under law." *See* Tex. Gov't Code Ann. § 552.007 (West 2004); *see also id.* § 552.353 (West Supp. 2011) (criminalizing distribution of information considered "confidential" under PIA). They further assert, and I agree, that section 552.104 is merely an exception to required disclosure under the PIA and does not, standing alone, make information "confidential" or otherwise prohibit voluntary disclosure of the information by a governmental body. *See id.* § 552.104; *Texas Comptroller of Pub. Accounts v. Attorney Gen. of Tex.*, 354 S.W.3d 336, 359 (Tex. 2010) (Wainwright, J., dissenting) (suggesting that section 552.104 information would be among that which a governmental body could voluntarily disclose). But the Port did not voluntarily disclose the information to the requestor here, and the majority is mistaken to the extent it suggests that any action or inaction by the Port in asserting section 552.104 before the Attorney General had equivalent legal effect. As previously explained, the Legislature has exempted 552.104 cases from the requirement that governmental bodies first raise exceptions before the Attorney General in order to subsequently raise them in court. *Id.* § 552.326; *see id.* § 552.305(a). Second, and more

8

importantly, private parties suing the Attorney General under section 552.325 are not subject to the exhaustion-of-remedies requirements applicable to governmental bodies. *See Morales v. Ellen*, 840 S.W.2d 519, 523 (Tex. App.—El Paso 1992, writ denied).

Whether or not a governmental body can voluntarily disclose information, but has not, might indeed be relevant to standing to the extent a third party is seeking to invoke a district court's subject-matter jurisdiction under the ultra-vires exception to sovereign immunity to restrain the Attorney General's disclosure of information on the basis that it would *violate* the PIA or exceed delegated authority under it, as opposed to being some sort of error in applying an exception.[10] But PIA section 552.325, again, provides a broader remedy, waiving sovereign immunity to permit challenges to the merits of the Attorney General's administrative determinations applying exceptions to mandatory disclosure. For reasons previously explained, a third party whose "competitors" or rival "bidders" would be "advantaged" within the meaning of section 552.104 by disclosure of the information would have standing or the right to invoke the exception. Although voluntary disclosure, were it to occur, could potentially render moot any right the third party has to protect the information, the mere fact that such disclosure is not prohibited says nothing about a party's standing or right to invoke section 552.104 in the first instance.

---

[10] *See, e.g.*, *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 514-17 (Tex. App.—Austin 2010, no pet.) (describing ultra-vires exception and distinguishing administrative decisions that are wrong on the merits from those that are ultra vires of an agency's powers). In addition to section 552.325, Boeing relies on the ultra-vires exception, presumably in regard to its trade-secret claim, a category of information that the PIA both excepts and prohibits from disclosure. *See* Tex. Gov't Code Ann. §§ 552.007, .022, .110(a) (West 2004 & Supp. 2011); *Center for Econ. Justice v. American Ins. Ass'n*, 39 S.W.3d 337, 348 (Tex. App.—Austin 2001, no pet.) (holding that common law trade secrets were "expressly confidential under other law" for purposes of the PIA).

9

With these qualifications, I join in the majority's judgment affirming the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justice Pemberton and Henson

Filed: March 9, 2012