# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00630-CV

**Greg Abbott, in his Official Capacity as Attorney General of the State of Texas, Appellant**

**v.**

**Dallas Area Rapid Transit, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GV-08-002588, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

In this case, we must decide whether the Texas Public Information Act (PIA), Tex. Gov't Code §§ 552.001–.353, requires disclosure of the names, positions, and hire dates of the public employees whose interviews are summarized in a completed investigation report regarding a claim of racially discriminating hiring practices at appellee Dallas Area Rapid Transit (DART). DART, which objected to disclosing any portion of its investigation report, brought this suit in Travis County District Court to contest the Attorney General's letter decision determining that the PIA required DART to disclose the entire investigation report. On cross-motions for summary judgment, the district court ordered DART to disclose the report, but with the identities, positions, and hire dates of the interviewees redacted. The Attorney General appeals from this judgment, asserting that the redacted information must be disclosed to the public. We will affirm in part, and reverse and render in part.

## Background

The underlying facts of this case are not in dispute, and the parties agree that this appeal presents questions of law. In August 2008, DART, which operates buses, light rail, commuter rail, and high-occupancy vehicle lanes in the Dallas metropolitan area,[1] received a public-information request from a Dallas television station for various documents and information relating to a racial-discrimination complaint made by one DART employee against two other DART employees. Among the information responsive to that request was a report documenting DART's internal investigation of the complaint. The director of DART's diversity and equal employment opportunity division conducted the investigation and drafted the report. In addition to other information relevant to the particular investigation, the report details the statements of several DART employees, identified by name, position, and hire date, who were required to make a statement regarding the allegations.

After receiving the public-information request, DART sought a decision from the Attorney General that it could withhold the investigation report under various PIA exceptions to disclosure. *See* Tex. Gov't Code § 552.301 (requiring governmental body that seeks to withhold information from public disclosure to request an Attorney General decision). The Attorney General issued a letter decision concluding that the PIA required that DART release the investigation report. *See* Tex. Att'y Gen. OR2008-14652.

In response to the Attorney General's decision, DART filed the underlying suit, seeking a declaration that it was not required to disclose the investigation report. *See* Tex. Gov't

---

[1] Specifically, DART is a Texas regional public transportation authority. *See* Tex. Transp. Code §§ 452.001–.720.

Code §§ 552.324–.325 (authorizing suit by governmental body seeking to withhold information and designating parties to such a suit). DART and the Attorney General proceeded to file cross-motions for summary judgment. DART's motion sought summary judgment declaring that it did not have to disclose the investigation report because the investigation report (1) is confidential under common-law privacy, federal and state anti-retaliation laws, and the "informer's privilege"; and (2) is excepted from disclosure under two PIA exemptions from disclosure, specifically sections 552.101 and 552.102. The Attorney General's motion sought the contrary declaration that DART must disclose the entire investigation report, arguing that, as PIA "core public information," the report may only be withheld if the information in the report is expressly confidential under other law, which the Attorney General argued it was not. The district court rendered judgment granting both motions in part and denying them in part, ordering DART to disclose the investigation report, but requiring that the "identities, and job positions and hire dates of the interviewees [be] redacted" from the report. It is from this judgment that the Attorney General now appeals.

**Analysis**

The Attorney General challenges the district court's summary judgment in two issues, principally arguing that the entire investigation report, including the names, positions, and hire dates of the interviewees must be disclosed under the PIA because it is core public information that is not made confidential by other law.

**Standard of review**

Because the parties do not dispute the relevant facts, this is a proper case for summary judgment. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000); *see* Tex. R.

3

Civ. P. 166a (providing that summary judgment is appropriate "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law"). On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *See City of Garland*, 22 S.W.3d at 356 (citing *Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 862 (Tex. 1993)). When the trial court grants one motion and denies the other, we should determine all questions presented and render the judgment that the trial court should have rendered. *See id.* (citing *Commissioners Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

**The Texas Public Information Act**

The Texas Legislature enacted the PIA with the express purpose of providing the public "complete information about the affairs of government and the official acts of public officials and employees." Tex. Gov't Code § 552.001(a); *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011). The PIA is aimed at preserving a fundamental tenet of representative democracy: "that the government is the servant and not the master of the people," Tex. Gov't Code § 552.001(a); *Jackson*, 351 S.W.3d at 293, and reflects the public policy that the people of Texas "remain[] informed so that they may retain control over the instruments they have created," Tex. Gov't Code § 552.001(a); *see Jackson*, 351 S.W.3d at 293. To advance these policy goals, the Legislature has directed that we liberally construe the PIA in favor of disclosure of requested information. *See* Tex. Gov't Code § 552.001; *Jackson*, 351 S.W.3d at 293.

The PIA guarantees access to "public information," subject to certain exceptions. *See generally* Tex. Gov't Code §§ 552.001–.153. "Those exceptions embrace the understanding that the public's right to know is tempered by the individual and other interests at stake in disclosing

4

the information." *Texas Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 114 (Tex. 2011). However, the PIA also generally excludes from those exceptions—i.e., creates an exception to its disclosure exceptions—certain special categories of public information. *See* Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 5, 1999 Tex. Gen. Laws 4500, 4501–02 (current version at Tex. Gov't Code § 552.022) (hereinafter cited as "Former Tex. Gov't Code § 552.022").[2] Former section 552.022's special categories of public information—often referred to as "core public information"—are protected from disclosure only if they are "expressly confidential under other law." *See* Former Tex. Gov't Code § 552.022(a); *Cox*, 343 S.W.3d at 114 (describing categories as "core public information"). Stated another way, "[c]ompared to the dozens of exceptions for disclosure of 'regular' public information, there is only one exception to the PIA's mandated disclosure of core public information—if it is 'expressly confidential under other law.'" *Cox*, 343 S.W.3d at 122 (Wainwright, J., concurring). "Other law," as it is used in former PIA section 552.022, means law other than the PIA, which includes "other statutes, judicial decisions, and rules promulgated by the judiciary." *See id.* at 113–15 (citing *In re City of Georgetown*, 53 S.W.3d 328, 332–33) (Tex. 2001).

It is undisputed that the investigation report at issue here is "core public information." Specifically, it is a "completed report, audit, evaluation, or investigation made of, for, or by a governmental body." *See* Former Tex. Gov't Code § 552.022(a)(1). As such, it can only be

---

[2] We cite to the 1999 version of PIA section 552.022 because that is the version that was in effect when the PIA request was made in this case. *See* Act of May 28, 2011, 82d Leg., R.S., ch. 1229, § 2, 2011 Tex. Gen. Laws 3271 (making amendments applicable to requests for information received on or after Sept. 1, 2011). The 2011 changes to subsection (a) provided that core public information was not excepted from disclosure "unless made confidential under this chapter or other law." *See id.* We express no opinion regarding how the 2011 changes to section 552.022 would affect our opinion here.

withheld from the public if it is "expressly confidential under other law." *See id.*; *Cox*, 343 S.W.3d at 114. DART argues, both here and in its motion for summary judgment, that the investigation report is confidential under concepts of common-law privacy, federal and state anti-retaliation laws, and the "informer's privilege." It also asserts that two PIA exceptions to disclosure allow it to withhold the investigation report.

**Common-law privacy**

We begin by addressing DART's contentions that the names, positions, and hire dates of the interviewees are confidential under concepts of common-law privacy. In *Industrial Foundation of the South v. Texas Industrial Accident Board*, the Texas Supreme Court held that concepts of common-law privacy law exempted documents from public disclosure under a former version of the PIA. *See* 540 S.W.2d 668, 686 (Tex. 1976). And more recently, the Texas Supreme Court explained that *Industrial*'s common-law privacy protection for PIA disclosure extends to the core public information. *See Cox*, 343 S.W.3d at 116.

Under *Industrial*, information is protected from mandatory disclosure as information deemed confidential by law if—

> (1) the information contains highly intimate or embarrassing facts the publication of which would be highly objectionable to a reasonable person, and (2) the information is not of legitimate concern to the public.

*See Industrial*, 540 S.W.2d at 685. In exploring what types of information might be "highly intimate or embarrassing," the supreme court referenced information concerning sexual assault, pregnancy, illegitimacy, mental or physical abuse, contraception, psychiatric treatment, injuries to genitalia,

6

and attempted suicide. *See id*. at 683. And importantly, the court specified that the embarrassing or intimate information must be information that is about the person potentially affected by the information's disclosure. *See id*. (discussing tort of invasion of privacy, from which it derived exception, and noting that "an injured party, in order to recover for public disclosure of private facts *about himself*, must show . . . that publicity was given to matters concerning *his* private life" (emphases added)).

DART asserts that the information at issue here—i.e., the interviewees' names, positions, and hire dates in connection with an investigation report regarding racial-discrimination claims—is intimate or highly embarrassing. We disagree. In contrast to the information found to be confidential in *Industrial*, the DART information is in no way intimate or embarrassing. The DART investigation report details the allegations of discrimination made by Rebecca Williams against her supervisor Tina Franco and another DART employee, Luis Ramirez. Williams alleged that Franco and Ramirez discriminated against her because of her race and color, created a hostile work environment, and retaliated against her because she complained. The DART employees whose information is at issue in this case were required to make statements during the investigation, but they were not the subject of any complaints or the investigation, nor were they accused of having made racial comments. Instead, they presumably were simply other DART employees who may have been in a position to shed light on the allegations made by Williams or on the subjects of the complaint. And based on the contents of the investigation report, it appears that the DART investigator asked the interviewees about a particular work meeting and about other workplace matters. Although some of the witnesses offered an opinion regarding the allegations or conditions of the workplace, none of the interviewees' statements contain any personal information about the

7

interviewees themselves, other than what they personally had seen or not seen in the workplace regarding the allegations in the complaint. In fact, the investigation report contains only information regarding what public employees observed while at their public place of employment during work hours. In other words, not only is the information not about the interviewees themselves, it is not the type of information that is intimate or highly embarrassing. Accordingly, the information here does not meet the first prong of the *Industrial* test and, as a result, is not confidential. *See Industrial*, 540 S.W.2d at 683.

DART argues that the El Paso Court of Appeal's decision in *Morales v. Ellen*, 840 S.W.2d 519 (Tex. App.—El Paso 1992, writ denied), supports its position that the information at issue here is intimate or highly embarrassing. We disagree. Although it similarly involved the identity of witnesses to an internal investigation, *Ellen* was decided before the Legislature created the categories of "core public information" that must be disclosed unless expressly made confidential by other law. *See* Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 5, 1999 Tex. Gen. Laws 4500, 4501–02. To that extent, *Ellen* cannot inform our decision here. But even if we were to disregard the state of the PIA at that time, *Ellen* does not preclude our determination here. The investigation in *Ellen* involved allegations of sexual assault in the workplace and, according to the opinion, the witnesses were required to give information about "*their* dating and sexual relationships, the state of marriages and other *highly personal* material." *See Ellen*, 840 S.W.2d at 524–25 (emphases added); *cf. Industrial*, 540 S.W.2d at 679–80 (describing the information at issue as being about the individuals seeking the privacy protection). In other words, the investigation report in *Ellen*, unlike the report here, included information that was personal to the witnesses themselves. In fact, the *Ellen* court noted that the witnesses in that case, had the information been disclosed by a private

8

source, "would possess a cause of action for invasion of privacy." *See id.* at 525. In contrast, the statements of the interviewees in this case do not include any information that is personal to the interviewees, only information about what they saw or heard, or did not see or hear, in the public workplace during working hours.

In sum, the information in the DART investigation report is not intimate or highly embarrassing, at least not in comparison to the information in *Industrial* and *Ellen.* Further, and perhaps most important, it is not information that is personal to the DART interviewees themselves. Accordingly, releasing the identification, position, and hire date of the interviewees would not violate their common-law right to privacy as articulated by the supreme court in *Industrial*. *See Industrial*, 540 S.W.2d at 682–85. Additionally, although we need not reach the issue having determined that the information here does not meet the first prong of the *Industrial* test, we would also note that the information at issue here may be of legitimate concern to the public. *See id.*

**Anti-retaliation statutes**

DART argues that federal and state anti-retaliation statutes make the information at issue here confidential. We disagree. The federal and Texas anti-retaliation statutes on which DART relies make it unlawful for an employer to discriminate against an employee who "testif[ies], assist[s], or participate[s] in any manner in an investigation" regarding employment discrimination. *See* 42 U.S.C. 2000e-3; Tex. Lab. Code § 21.055. Stated another way, these statutes make punishing an employee for participating in an internal investigation an unlawful employment practice. *See* 42 U.S.C. 2000e-3; Tex. Lab. Code § 21.055. But these provisions do not expressly, or even implicitly for that matter, make the information surrounding the investigation confidential. *See*

9

42 U.S.C. 2000e-3; Tex. Lab. Code § 21.055. Moreover, the witnesses' names at issue here are already known to the employer. Accordingly, we hold that the anti-retaliation statutes relied on by DART here are not "other law" that make the information confidential.

**Informer's privilege**

DART argued in its summary judgment motion and in its brief here that the "informer's privilege" makes the information at issue here confidential. We disagree. The "informer's privilege" is "the Government's privilege to withhold from disclosure the identity of individuals who provide the government with information regarding violations of law to officers charged with enforcement of that law." *See Rovario v. United States*, 353 U.S. 53, 59–61 (1957). The Attorney General considers this privilege to fall under PIA section 552.101, which excepts from disclosure "information considered to be confidential by law, either constitutional, statutory, or by judicial decision." *See, e.g.*, Tex. Att'y Gen. Op. OR2008-08778 (citing Tex. Gov't Code § 552.102). And the Attorney General describes the privilege as protecting from disclosure "the identities of persons who report activities over which the governmental body has criminal or quasi-criminal law-enforcement authority." *See id.* But assuming without deciding that the information here involves the violation of a civil statute, there is no summary-judgment evidence that the interviewees "reported violations" to an agency with criminal or quasi-criminal enforcement authority. Instead, the summary-judgment evidence shows that the interviewees were required by DART to make statements regarding the complaints to an internal DART employee. Further, that DART employee was a member of DART's diversity and EEO division, which oversees DART's internal "Equal Employment Opportunity Policy" and "provides an available outlet for employees

10

to voice potential violations and/or file complaints regarding EEO policy." But there is no summary-judgment evidence showing whether the department, or DART, has any authority to enforce a violation. In the absence of such evidence, DART has failed to prove as a matter of law that it would be entitled to assert this privilege. Accordingly, we cannot uphold the district court's summary judgment on this ground.[3]

**PIA exceptions to disclosure**

DART argues that the investigation report can be withheld from disclosure under PIA exceptions found in section 552.101, which excepts from disclosure information that is considered to be confidential by law, *see* Tex. Gov't Code § 552.101, and PIA section 552.102, which excepts from disclosure "information in a personnel file, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," *see id.* § 552.102. We disagree. First, these two exceptions are part of the "regular" PIA exceptions to disclosure found in subchapter C of the PIA. *See id.*; *Cox*, 343 S.W.3d at 122. As such, they do not apply to—i.e., they cannot be used to withhold—core public information like the investigation report. *See* Tex. Gov't Code § 552.022; *Cox*, 343 S.W.3d at 114. Further, to the extent that either of these sections might invoke common-law privacy protections such that they could be said to confer confidentiality on the investigation report, we have addressed that issue previously. For the same reasons, the Texas jurisprudence on section 552.102 and the related federal jurisprudence regarding similar federal exceptions on which

---

[3] The evidence in the record suggests that DART told the interviewees that their identities in connection with their statements would not be disclosed. DART, however, cannot unilaterally make public information confidential or, in fact, create an exception to its disclosure. *See Industrial Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 677 (noting that allowing an agency to do so would "circumvent the very purpose of the Open Records Act").

11

DART relies in making this argument provide no support for the district court's summary judgment in this case. *See Cappiabianca v. Commissioner, U.S. Customs Serv.*, 847 F. Supp. 1558 (M.D. Fla. 1994) (construing Freedom of Information Act section 552(b)(6), which is similar to PIA section 552.102, to exempt from disclosure the identities of witnesses to various types of workplace discrimination investigations); *Texas Comptroller v. Attorney Gen.*, 354 S.W.3d 336 (Tex. 2010) (holding that section 552.102 exempts public employee's birth dates, which are not core public information, from disclosure because disclosure results in an unwarranted invasion of personal privacy). Finally, we would note that section 552.102 also does not apply to the information at issue here because there is no evidence in the record before us that DART's investigation report is in the interviewees' personnel files. And while the particular information at issue here—i.e., the names, positions, and hire dates of the individual interviewees—is undoubtedly found in some form within their personnel files, it is not in those files in the context of the investigation report at issue here.

Because the information at issue in this case—the investigation report, including the names, positions, and hire dates of the interviewees—is core public information that is not expressly made confidential by other law, the Attorney General, and not DART, was entitled to summary judgment. Accordingly, we sustain the Attorney General's issues on appeal.

**Conclusion**

Having sustained the Attorney General's issues on appeal, we reverse the part of the judgment requiring that the identities, job positions, and hire dates of the interviewees be redacted, we render judgment that the investigation report be disclosed without redaction, and we affirm the judgment in all other respects.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed in part; Reversed and Rendered in part

Filed:   August 30, 2013