# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00619-CV

**Argonaut Insurance Company and Argonaut Great Central Insurance Company, Appellants**

**v.**

**Glenn Hegar, Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. D-1-GN-11-001584, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Argonaut Insurance Company and Argonaut Great Central Insurance Company (jointly Argonaut) appeal from the trial court's summary judgment in favor of Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas (jointly the Comptroller).[1] Argonaut filed suit in Travis County to recover taxes paid under protest. *See* Tex. Tax Code §§ 112.001, .051, .052. The parties filed competing motions for summary judgment. The trial court granted the Comptroller's motion, denied Argonaut's motion, and rendered judgment that Argonaut take nothing by its claims. For the reasons that follow, we affirm the trial court's judgment.

---

[1] We substitute Glenn Hegar, in his official capacity, as successor to Susan Combs as Comptroller of Public Accounts and Ken Paxton, in his official capacity, as successor to Greg Abbott as Attorney General. *See* Tex. R. App. 7.2(a).

**FACTUAL AND PROCEDURAL BACKGROUND**

Argonaut provided insurance to the Texas Association of Public Educators Interlocal Agreement Self-Insurance League (TAPE) and the Texas Association of Political Subdivisions Interlocal Agreement Self-Insurance League (TAPS). TAPE and TAPS are self-funded risk pools created by political subdivisions under the authority of Chapter 172 of the Local Government Code. *See generally* Tex. Loc. Gov't Code §§ 172.001–.015 (providing for uniform group benefits programs for employees of political subdivisions). Political subdivisions, including counties and school districts, may establish risk pools or enter into interlocal agreements with other political subdivisions to establish risk pools. *Id.* §§ 172.003(3), .005; *see generally* Tex. Gov't Code §§ 791.001–.035 (authorizing local governmental units to contract with one another); *see also* Tex. Loc. Gov't Code § 119.002 (authorizing county governments to create risk management pool). TAPE and TAPS were formed under interlocal agreements to pool the self-insured risks of the participating political subdivisions and provide insurance to participating members. They are organized as tax exempt civic leagues for the promotion of the common governmental interests of their members under section 501(c)(4) of the Internal Revenue Code and are not companies licensed by the Texas Department of Insurance. *See* 26 U.S.C. § 501(c)(4). TAPE and TAPS provide several types of coverage, including general liability, automobile liability, property damage, and inland marine. They collect premiums from the members and are directly liable to the members for covered losses.

TAPE entered into a contract with Argonaut Insurance Company entitled Texas Association of Public Educators Reinsurance Program; likewise, TAPS entered into a contract with

2

Argonaut Great Central Insurance Company entitled Texas Association of Political Subdivisions Reinsurance Program. Under the terms of the contracts, Argonaut agreed to indemnify TAPE and TAPS for losses under certificates, or policies, issued to participating members under the interlocal agreements. TAPE and TAPS agreed to cede to Argonaut 100% of the premiums received on policies issued to their members. For accounting purposes, Argonaut booked all premiums, losses, and expenses associated with the agreements with TAPE and TAPS as reinsurance income and expense. While premiums received for direct insurance are taxable, certain premiums received for reinsurance are excluded from the determination of an insurer's taxable premium receipts. *See* Tex. Ins. Code §§ 221.002 (governing property and casualty insurance), 222.002 (governing life, health, and accident insurance).

The Comptroller has the authority to administer the insurance taxes at issue. *See* Tex. Ins. Code § 201.051 (comptroller shall administer and enforce provisions of Insurance Code and other insurance laws that relate to administration, collection, and reporting of taxes and fees imposed under Insurance Code or other insurance law); Tex. Tax Code §§ 111.0021 (Chapter 111 of Tax Code concerning collection procedures applies to tax or fee comptroller is required to collect under a law not included in this title), 111.0022 (this subtitle (Enforcement and Collection) and subtitle A of this title (General Provisions) apply to administration, collection, and enforcement of other taxes fees and charges comptroller is required or authorized to collect or administer under other law). Between January 2006 and December 2009, the Comptroller conducted an audit of Argonaut and disallowed Argonaut's classification of the premiums received from TAPE and TAPS as reinsurance premiums on the ground that under Comptroller Rule 3.831, for premiums to qualify as paid

3

for reinsurance, the transaction must occur between two licensed insurance companies. *See* 34 Tex. Admin. Code § 3.831(1)(A)(iii) (Tex. Comptroller of Pub. Accounts, Gross Premium Definitions for Property and Casualty; Life, Accident, and Health; Health Maintenance Organizations; and Title Insurance Companies; and Clarification of the Taxation on the Distribution of Title Premiums). The Comptroller reasoned that because TAPE and TAPS are not licensed insurance companies, the premiums they paid to Argonaut were not reinsurance but were to directly insure risks. Consequently, the Comptroller assessed additional premium taxes against Argonaut Insurance Company in the amount of $318,704.00 and additional maintenance taxes in the amount of $55,011.29, plus penalties and interest, for a total of $443,312.46. The Comptroller assessed additional premium taxes against Argonaut Great Central Insurance Company in the amount of $490,448.00 and additional maintenance taxes in the amount of $79,807.16, plus penalties and interest, for a total of $714,275.87.

Argonaut paid the total amounts assessed under protest and filed this suit pursuant to Chapter 112 of the Tax Code to recover the amounts paid under protest. *See* Tex. Tax Code §§ 112.051, .052. Argonaut and the Comptroller filed competing motions for summary judgment. The trial court denied Argonaut's motion, granted the Comptroller's motion, and rendered judgment that Argonaut take nothing by its claims. This appeal followed.

**STANDARD OF REVIEW**

Because the parties do not dispute the relevant facts, this is a proper case for summary judgment. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860,

862 (Tex. 2010). When the trial court does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland*, 22 S.W.3d at 356; *Abbott v. Dallas Area Rapid Transit*, 410 S.W.3d 876, 879 (Tex. App.—Austin 2013, no pet.). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)).

Argonaut's issues concern statutory construction, a question of law that we review de novo. *See Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Our primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). Words that are not defined are given their ordinary meanings unless a different meaning is apparent from the context or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). "We generally avoid construing individual provisions of a statute in isolation from the statute as a whole." *Texas Citizens*, 336 S.W.3d at 628. "Taxing statutes are construed strictly against the taxing authority and liberally for the taxpayer." *Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012) (per curiam). If the statutory

5

language or agency rule is ambiguous, we may defer to an administrative agency's construction of its own statutory authority and rules as long as the construction is reasonable and does not conflict with the language of the statute or rule. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011); *Texas Citizens*, 336 S.W.3d at 624; *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 475 (Tex. App.—Austin 2012, pet. denied). "However, agency deference does not displace strict construction when the dispute is not over how much tax is due but, more fundamentally, whether the tax applies at all." *TracFone Wireless, Inc. v. Commission on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013).

**DISCUSSION**

In two issues, Argonaut argues that the trial court erred in denying its motion for summary judgment and granting that of the Comptroller. Its arguments are premised on the contention that the contracts between Argonaut and TAPE and TAPS are agreements for reinsurance. The Comptroller agrees that the central issue is whether the premiums received by Argonaut from TAPE and TAPS are premiums received from another insurer for reinsurance; however, the Comptroller asserts that TAPE and TAPS are not "insurance companies" or "insurers," and accordingly, the premiums are not reportable as reinsurance. Based on our reading of the applicable statutory provisions, we ultimately agree with the Comptroller.

Argonaut focuses on the nature of its contracts with TAPE and TAPES, insisting that they embodied all the characteristics of reinsurance and arguing that governmental risk pools are authorized to purchase reinsurance. Argonaut further argues that the fact that TAPE and TAPS are not licensed insurance companies is not dispositive. In light of the plain language of the applicable

6

statutes, we cannot agree. While a risk pool is expressly authorized to purchase reinsurance, it is also expressly declared not to be insurance or an insurer. *See* Tex. Loc. Gov't Code §§ 172.008 (risk pool may purchase reinsurance to insure pool against losses), .014 ("A risk pool created under this chapter is not insurance or an insurer under the Insurance Code and other laws of this state, and the State Board of Insurance does not have jurisdiction over a pool created under this chapter."); *see also* Tex. Loc. Gov't Code §§ 119.005(e) (county government risk management pool may purchase reinsurance for risks covered by pool), .008 (county government risk management pool created under chapter 119 is not insurance for purposes of Insurance Code and laws); *Texas Dep't of Ins. v. American Nat'l Ins. Co.*, 410 S.W.3d 843, 848 (Tex. 2012) (employers who self fund employee health benefit plans perform service similar to that of insurance companies and "operate much like insurers" but "are clearly not insurance companies").

The tax exclusion at issue applies, for purposes of the property and casualty insurance premium tax, to "premium receipts received from *another authorized insurer* for reinsurance," *see* Tex. Ins. Code § 221.002(c)(3) (emphasis added), and, for purposes of the life, health, and accident insurance premium tax, to "premiums received from *an insurer* for reinsurance," *see id.* § 222.002(c)(3) (emphasis added). Comptroller Rule 3.831, promulgated pursuant to authority under Insurance Code section 201.051 and Tax Code sections 111.0021 and 111.0022, is consistent with these statutory provisions. *See* Tex. Ins. Code § 201.051; Tex. Tax Code §§ 111.0021, .0022; 34 Tex. Admin. Code § 3.831(1)(A)(iii) (excluding from premium tax "premiums received from *other licensed companies* for reinsurance" for property and casualty insurance) (emphasis added),

(2)(A)(iii) (excluding from premium tax "premiums that an insurance carriers [sic] receives from *another insurance carrier* for reinsurance) (emphasis added).

Although they vary slightly, there is no substantive difference between the key terms used in sections 221.002 and 222.002 and Rule 3.831—"authorized insurer," "insurer," "licensed company," and "insurance carrier." None of the terms is defined in Chapter 221 or 222; however, their ordinary meanings and definitions of some of the terms provided elsewhere in the Insurance Code all generally refer to a company that sells insurance and is regulated by the Texas Department of Insurance. "Insurance company" is ordinarily defined as "a corporation or association that issues insurance policies." *See Black's Law Dictionary* 925 (10th ed. 2014). Chapter 822 of the Insurance Code, concerning incorporation and regulatory requirements for "each company or organization that proposes to engage in any kind of insurance business other than a life, health, or accident insurance company," refers to formation of "a company for the purpose of engaging in the business of insurance." *See* Tex. Ins. Code §§ 822.001, .051(a). Similarly, Chapter 841, concerning life, health, and accident insurance companies, defines "insurance company" and "company" as "all corporations engaged as a principal in the business of life, accident, or health insurance." *See id.* § 841.001(8). "Carrier" is defined as an "insurer," *see Black's Law Dictionary* at 256–57, and "insurer" is defined in Chapter 101, concerning unauthorized insurance, as

> (A) a corporation, association, partnership, or individual engaged as a principal in the business of insurance;
>
> (B) an interinsurance exchange or mutual benefit society; or
>
> (C) an insurance exchange or syndicate.

Tex. Ins. Code § 101.002(1). "Licensed" means "having permission to do something, usu. as evidenced by a written certificate," *Black's Law Dictionary* at 1061; similarly, "authorize" means "to give legal authority; to formally approve; to sanction." *See id.* at 159. By definition, then, these terms all describe regulated entities that are authorized or licensed to conduct the business of insurance. Thus, all four provisions require that for premiums to be excluded from the premium tax, they must be received from an insurer subject to regulation by the Texas Department of Insurance. *See* Tex. Ins. Code §§ 221.002(c)(3), 222.002(c)(3); 34 Tex. Admin. Code § 3.831(1)(A)(iii), (2)(A)(iii). Because TAPE and TAPS are organized as nonprofit civic leagues that are not engaged in the business of insurance and are statutorily declared not to be insurers and not subject to the jurisdiction of the State Board of Insurance, *see* Tex. Loc. Gov't Code § 172.014, premiums Argonaut received from them were not received from "another authorized insurer" or "an insurer" as required by sections 221.002 and 222.002 and are thus not covered by the plain language of the statutory exclusion. *See* Tex. Ins. Code §§ 221.002(c)(3), 222.002(c)(3); *Marks*, 319 S.W.3d at 663. We therefore conclude that the trial court did not err in granting the Comptroller's motion for summary judgment and denying Argonaut's motion and overrule Argonaut's two issues.[2]

## CONCLUSION

Having overruled Argonaut's issues, we affirm the trial court's judgment.

---

[2] Although the parties join issue on whether the product Argonaut sold to TAPE and TAPS was reinsurance, because we conclude that TAPE and TAPS are not insurers under the relevant statutes, we do not reach their arguments on this issue. *See* Tex. R. App. P. 47.1.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:   June 24, 2015

10