# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00243-CV

**Leander Independent School District, Appellant**

**v.**

**Office of the Attorney General for the State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. D-1-GN-15-003679, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N[1]

Leander Independent School District (LISD) appeals from the district court's summary and declaratory final judgment that a document LISD sought to withhold from public disclosure must be released to the requestor because claimed exceptions under the Public Information Act (PIA or Act) do not apply. *See* Tex. Gov't Code §§ 552.101 (excepting information considered confidential by law), .103 (excepting information relating to litigation to which governmental agency is or may be party), .107 (excepting, in relevant part, information protected by attorney-client privilege), .111 (excepting information that would not be available to party in litigation with agency). For the reasons that follow, we affirm the trial court's judgment.

---

[1] Notice of appeal for this case was originally filed in this Court in June 2016, at which time the case was transferred to the El Paso Court of Appeals in compliance with a docket-equalization order issued by the Texas Supreme Court. On April 12, 2018, the Texas Supreme Court ordered that certain cases be transferred back to this Court from the El Paso Court, and we consider this appeal pursuant to that order. *See* Misc. Docket No. 18-9054 (Tex. Apr. 12, 2018).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 12, 2015, LISD received an open records request under the PIA from news reporter Brian Collister for copies of "any and all current policies and procedures used by [LISD's] Human Resources [department] for employee-related investigations," including "the actual Investigation Log." In responding to the PIA request, LISD sought to withhold from disclosure a document entitled "Complaints" (the Complaints Document or Document), a three-page spreadsheet containing information about select complaints against LISD employees for the 2011 through 2014 school years. For each complaint, the Document lists the affected program, the "category" of the complaint, the date the complaint was received, the "status" of the investigation, the complainant, the identity of the employee against whom the allegations were made, the nature of the complaint, and any comments regarding the investigation. The summary judgment record reflects that LISD's Assistant Superintendent Karie Lynn McSpadden created the Document.

LISD requested a determination from the Attorney General (AG) that certain PIA exceptions apply to the Complaints Document. The AG determined that section 552.135 of the PIA excepted from disclosure some of the information contained in the Document—the complainants' identities—but the rest was subject to disclosure under the PIA. *See* Tex. Att'y Gen. OR2015-16865 (citing Tex. Gov't Code § 552.135). LISD appealed this ruling to the district court seeking declaratory judgment that the additional information was not subject to disclosure. The parties filed competing motions for summary judgment. After reviewing the Document *in camera*, the district court granted the AG's motion, denied LISD's motion, and rendered declaratory judgment that the information is not excepted from required public disclosure and must be released to the requestor.

2

## II.  STANDARD OF REVIEW

We review declaratory judgments under the same standard as other judgments or decrees.  Tex. Civ. Prac. & Rem. Code § 37.010; *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied).  Here, because the trial court rendered the declaratory judgment through summary judgment proceedings, "we review the propriety of the trial court's declarations under the same standards we apply to summary judgment."  *Hawkins*, 214 S.W.3d at 719.  A trial court's summary judgment is reviewed de novo.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  Accordingly, we review the trial court's final judgment granting both declaratory and summary judgment de novo.

When the trial court does not specify the grounds for granting the summary judgment motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious.  *Id.* at 216.  When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law.  *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex. 2000) (plurality op.); *Abbott v. Dallas Area Rapid Transit*, 410 S.W.3d 876, 879 (Tex. App.—Austin 2013, no pet.) (*DART*).  When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment the trial court should have rendered.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)); *DART*, 410 S.W.3d at 879 (citing *Dallas Morning News*, 22 S.W.3d at 356).

3

## III. THE TEXAS PUBLIC INFORMATION ACT

The PIA embodies the State's policy that "each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees." Tex. Gov't Code § 552.001(a); *Paxton v. City of Dallas*, 509 S.W.3d 247, 251 (Tex. 2017). The PIA therefore mandates the disclosure of public information, subject to certain exceptions. *See generally* Tex. Gov't Code §§ 552.001–.353. But a governmental body cannot unilaterally determine that an exception applies because "[t]he people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know." *Id.* § 552.001(a); *City of Dallas*, 509 S.W.3d at 251. Accordingly, when seeking to withhold information under a PIA exception, the governmental body must timely request a decision from the AG, specify under which exception the information falls, and provide the reasons why the exception applies, and the AG must promptly render a decision in a written opinion. Tex. Gov't Code §§ 552.301(a), (e)(1)(A), .306(a), (b); *City of Dallas*, 509 S.W.3d at 251. If the governmental body disputes the decision, its exclusive remedy is to seek declaratory relief in district court. Tex. Gov't Code § 552.324(a); *City of Dallas*, 509 S.W.3d at 252.

On appeal, "we generally give due consideration to [AG] decisions, although they are not binding, because the Legislature has directed the [AG] to determine whether records must be disclosed under the PIA." *Austin Bulldog v. Leffingwell*, 490 S.W.3d 240, 250 (Tex. App.—Austin 2016, no pet.). Additionally, in interpreting the PIA, the Legislature has given the directive that the PIA "shall be liberally construed in favor of granting a request for information." Tex. Gov't Code

4

§ 552.001(b). Therefore, "close judgment calls are to be resolved in favor of the stated purpose of the legislation," and courts may require disclosure of information "even when disclosure might cause inconvenience or embarrassment." *Hubert v. Harte-Hanks Tex. Newspapers, Inc.*, 652 S.W.2d 546, 552 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (citing *Industrial Found. of the S. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 678 (Tex. 1976) (plurality op.) (*IFS*)). "Whether information is subject to the Act and whether an exception applies to the information are questions of law." *Texas Dep't of Pub. Safety v. Abbott*, 310 S.W.3d 670, 673 (Tex. App.—Austin 2010, no pet.) (citing *Dallas Morning News*, 22 S.W.3d at 357).

## IV. DISCUSSION

In this appeal, LISD raises five issues. In its second through fifth issues, LISD claims that the Complaints Document is excepted from required public disclosure as a matter of law under four sections of the PIA—sections 552.111, 552.101, 552.103, and 552.107, respectively—and that the district court erred in not applying these exceptions. Relying solely on these statutory grounds, LISD asserts in its first issue a general complaint that the district court erred in granting the AG's motion for summary judgment and denying LISD's motion. For the reasons explained below, we overrule LISD's second through fifth issues. We therefore likewise overrule LISD's first issue.

### A. Section 552.111 Exception

In its second issue, LISD argues that the district court erred by not applying section 552.111's exception to the Complaints Document because the deliberative process and work product privileges apply. Section 552.111 exempts from required public disclosure "[a]n interagency or

5

intraagency memorandum or letter that would not be available by law to a party in litigation with the agency." Tex. Gov't Code § 552.111. Texas courts and the AG have interpreted section 552.111 as encompassing both the common law deliberative process privilege and the attorney work product privilege. *See Dallas Morning News*, 22 S.W.3d at 361 (observing that section 552.111 exception encompasses common law deliberative process privilege); Tex. Att'y Gen. ORD-677 at 5 (2002) (noting that section 552.111 incorporates work product privilege); *see also Texas Dep't of Pub. Safety v. Gilbreath*, 842 S.W.2d 408, 413 (Tex. App.—Austin 1992, no writ) (noting that statutory language of exception "exempts those documents, and only those documents, normally privileged in the civil discovery context"). Because the deliberative process privilege and the work product privilege are separate and distinct privileges, we address each argument in turn.

### 1. *Deliberative Process*

The purpose of excepting privileged deliberative process information under section 552.111 is "to protect advice and opinions on policy matters and to encourage frank and open discussion within the agency in connection with its decision-making processes." *Gilbreath*, 842 S.W.2d at 412; *see Dallas Morning News*, 22 S.W.3d at 364. Thus, agency advice and opinions are protected if they are "predecisional," "deliberative," and "relate to the agency's policymaking." *Dallas Morning News*, 22 S.W.3d at 361–64 (noting that privilege "protects only those agency communications or parts of agency communications that relate to the agency's policymaking" and are predecisional and deliberative); *Arlington Indep. Sch. Dist. v. Texas Att'y Gen.*, 37 S.W.3d 152, 158 (Tex. App.—Austin 2001, no pet.) (same). However, the exception "does not protect written observations of facts and events that are severable from advice, opinions, and recommendations."

6

*AISD*, 37 S.W.3d at 157. Accordingly, factual and evaluative information may be excepted from disclosure only when they are "so inextricably intertwined with material involving advice, opinions and recommendations as to make the separation impractical." Tex. Att'y Gen. ORD-313 at 3 (1982).

LISD contends that Assistant Superintendent McSpadden prepared the Complaints Document to facilitate the policymaking decisions of LISD and that the Document was "key to [McSpadden's] efforts in creating, revising, and implementing certain district policies." But it is "insufficient for an agency to assert the protection of the agency memoranda exception solely because a decisionmaker uses a document when determining policy." *AISD*, 37 S.W.3d at 159 (citing *Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975)). For example, although factual reports, summaries, and evaluations "may initiate or be used in a deliberative process," they generally "'provide the raw data upon which decisions can be made; they are not themselves a part of the decisional process.'" *Id.* at 160 (citing Tex. Att'y Gen. ORD-160 at 3 (1977), and quoting Tex. Att'y Gen. ORD-213 at 2 (1978)).

We have reviewed the Complaints Document and conclude that the information constitutes purely factual and evaluative information. The field category titles on the Document—"Program," "Category," "Date," "Status," "Complainant," "Allegations against," "Nature of Complaint," and "Comments"[2]— demonstrate the factual nature of the information, and

---

[2] Although a "Comments" section may be a natural location to include advice and opinions, our review of the Document reveals that the "Comments" section included the results of any completed investigations or any further actions taken by the employee—*e.g.*, the employee resigned—not any advice, recommendations, or opinions.

7

our review of the Document does not identify any advice, recommendations, or opinions related to policymaking.

LISD appears to agree that the Complaints Document consists of factual information, and that advice, opinions, and recommendations are not directly contained in the Document's text. Instead, LISD argues that the selection and winnowing of the factual information included in the Document reflect McSpadden's deliberative process and somehow communicate advice and opinions. In her affidavit, McSpadden states "the factual information contained [in the Document] leads the reader directly to the opinions, recommendations and advice related to these matters" and the Document "include[s] limited information of certain investigations as a way to communicate with the Superintendent and Board of Trustees my recommendations on policymaking[.]"

We find LISD's argument unpersuasive. First, the fact that McSpadden used a deliberative process to determine what information to include in the Document makes the Document the product of the deliberation, not a predecisional, privileged document that is part of the deliberation process. *See Dallas Morning News*, 22 S.W.3d at 361 ("Predecisional documents are those 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975))). Second, the summary judgment record shows that the Document was not shared with either the Superintendent or the Board of Trustees; rather, as McSpadden stated in her affidavit, the Document was "used *by me* to consult with . . . the school board." (Emphasis added.) In fact, McSpadden stated in an email response to the PIA requestor that the Document "is only used or seen by me to track investigations throughout the year. It is really my internal working document." Thus, the Document fails to

8

"reflect the 'give-and–take of the consultative process'" required of deliberative documents. *See id.* (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

In *AISD*, we were faced with analogous facts and find our decision controlling here. There, Arlington ISD sought to withhold compilations of survey results that assessed the effectiveness of existing school district policies and rated the current environments in each school within Arlington ISD. 37 S.W.3d at 160. However, we concluded that "[t]he surveys themselves are not distributed in contemplation of any new policy and merely permit the school district to measure its performance under existing policy." *Id.* Like the survey results in *AISD*, the compilation of complaints and related information included in the Document here were not distributed in contemplation of any new policy, do not address any new potential policies or recommendations, and merely permit the school district to evaluate its current policies on employee conduct. Although the Document may identify problems and lack of compliance that may spur changes to existing policies regarding employee conduct, we conclude that, like the *AISD* survey results, this information constitutes "the raw data upon which decisions can be made" but is "not [itself] a part of the decisional process." *See id.* (quoting *Vaughn*, 523 F.2d at 1145); *accord* Tex. Att'y Gen. ORD-464 (1987); ORD-419 (1984); ORD-213 (1978); ORD-160 (1977).

LISD also argues that the Complaints Document is "more akin to the narratives" that were included in the *AISD* survey responses, which the AG protected from disclosure and were not at issue on appeal. *See AISD*, 37 S.W.3d at 156 (citing Tex. Att'y Gen. OR1998-3164, OR1999-2414). However, the AG based its decision on the fact that the narrative responses "represent [the survey] respondents' written responses reflecting those individuals' advice or opinions regarding policy

9

matters concerning the district." Tex. Att'y Gen. OR1999-2414 at 1. In contrast, and as we have already noted, here the Document does not contain advice or opinions regarding policy matters.

Finally, LISD attempts to distinguish *AISD* from an evidentiary standpoint by arguing that while the affidavits were stricken in that case, the affidavits here were not stricken and support the deliberative process privilege. *See AISD*, 37 S.W.3d at 161–63. However, "conclusory statements in an affidavit are substantively defective, and defects in the substance of an affidavit are not waived by the failure to obtain a ruling from the trial court." *L. Ray Calhoun & Co. v. R.R. Salvage & Restoration, Inc.*, No. 03-08-00198-CV, 2009 WL 280760, at *3 (Tex. App.—Austin Feb. 5, 2009, no pet.) (mem. op.). The AG argues in its briefing before this Court that LISD's conclusory affidavits fail to support the deliberative process to defeat summary judgment. We agree. Like the affidavits in *AISD*, the affidavits here "provide no facts to demonstrate how [the information] function[s] as something more than raw data used to justify decisions to *initiate* the policymaking process for purposes of repealing, revising, or adding a policy." *AISD*, 37 S.W.3d at 162 (citing *Vaughn*, 523 F.2d at 1145). And although the information included in the Document "may trigger policymaking, this does not transform [its] role from a catalyst to a part of the process." *See id.*

We therefore conclude that the district court did not err in not applying the deliberative process privilege contained in section 552.111 to the Complaints Document.

## 2. *Work Product*

LISD also argues in its second issue that because the Complaints Document constitutes work product under Texas Rule of Civil Procedure 192.5, it should be protected from disclosure under section 552.111. Rule 192.5 defines work product as:

> (1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representative, including the party's attorney, consultants, sureties, indemnitors, insurers, employees, or agents; or
>
> (2) a communication made in anticipation of litigation or for trial between a party and the party's representative, including the party's attorney, consultants, sureties, indemnitors, insurers, employees, or agents.

Tex. R. Civ. P. 192.5(a). The parties do not dispute that the Document was prepared by "a party's representative"—namely, LISD's employee McSpadden. We therefore consider whether the Document was made or prepared "in anticipation of litigation." *Id.*

In *National Tank Co. v. Brotherton*, the Texas Supreme Court utilized a two-prong test, consisting of an objective and a subjective prong, to determine if documents were prepared in anticipation of litigation. *See* 851 S.W.2d 193, 203–05 (Tex. 1993) (orig. proceeding) (plurality op.) (citing *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 40–41 (Tex. 1989) (orig. proceeding)).[3] Pursuant to the *National Tank* test, a document is prepared in anticipation of litigation when:

---

[3] Although *National Tank* is a plurality opinion, the Texas Supreme Court, this Court, and the AG have all cited and relied on the *National Tank* test in subsequent decisions. *See, e.g.*, *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 20 (Tex. 2014); *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 722 (Tex. 2003); *Trevino v. Ortega*, 969 S.W.2d 950, 956 (Tex. 1998); *Mangham v. YMCA of Austin, Tex.-Hays Cmtys.*, 408 S.W.3d 923, 931 (Tex. App—Austin 2013, no pet.); Tex. Att'y Gen. ORD-677 at 6 (2002).

11

a) a reasonable person would have concluded from the totality of the circumstances surrounding the investigation that there was a substantial chance that litigation would ensue; and

b) the party resisting discovery believed in good faith that there was a substantial chance that litigation would ensue and conducted the investigation for the purpose of preparing for such litigation.

*Id.* at 195; *see also In re Mid-Century Ins. Co.*, 549 S.W.3d 730, 734 (Tex. App.—Waco 2017, orig. proceeding). "Substantial chance of litigation" is not a "particular statistical probability that litigation will occur; rather, it simply means that litigation is 'more than merely an abstract possibility or unwarranted fear.'" *National Tank*, 851 S.W.2d at 204 (quoting dissent, 851 S.W.3d at 216, in agreement).

Here, the record does not show that LISD met its burden to satisfy the objective prong. LISD maintains that the Complaints Document constitutes work product because the field column "Categories" in the Document lists various forms of discrimination, harassment, and violations of policy; McSpadden's affidavit states that one reason she prepared the Document was to identify potential litigation; and McSpadden consulted with counsel in most cases to determine if an investigation should be included on the list. But the mere categorization of complaints to identify "potential" litigation fails to establish anything more than a "mere abstract possibility or unwarranted fear" of litigation on the part of McSpadden. *See id*. And the fact that McSpadden consulted with counsel does not impact the analysis of whether a reasonable person would have concluded from the "totality of the circumstances" that "there was a substantial chance litigation would ensue." *Id.* at 195. Thus, LISD's summary judgment evidence failed to demonstrate that the

12

complaints listed in the Document were of such a nature to cause a reasonable person to conclude there was a "substantial chance" of litigation based on those complaints.

Even if the objective prong had been satisfied, however, LISD did not meet its burden to establish the subjective prong. The summary judgment evidence does not show that at the time McSpadden created the Document she actually believed that there was a substantial chance of litigation concerning each of the listed complaints. Although McSpadden stated that only those complaints that "may" have "administrative or legal consequences" were included in the list, this does not mean that McSpadden believed there was a "substantial chance that litigation would ensue." In fact, McSpadden stated that many of the complaints were "unfounded," which contradicts the notion that LISD reasonably expected litigation based on these incidents. Accordingly, the Document does not meet the criteria necessary to be work product in civil litigation. *See id.*

Because we conclude that the deliberative process and work product privileges do not apply, we hold that the district court did not err in concluding section 552.111 does not exempt the Document from required public disclosure. We therefore overrule LISD's second issue.

**B. Section 552.101 Exception**

In its third issue, LISD argues that under section 552.101, the common law and constitutional rights to privacy protect its employees' information in the Complaints Document related to "allegations of sexual affairs, sexual harassment, inappropriate comments, extramarital activities, and CPS reports." Thus, even if the Document as a whole is not exempted from required public disclosure, LISD asserts that "the portions of the [Complaints Document] reflected under the

13

[Document] categories 'Allegations against' and/or 'Nature of Complaint'" should be excepted from required public disclosure under section 552.101.

Section 552.101 allows public information to be "excepted from the [public disclosure] requirements of Section 552.021 if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision." Tex. Gov't Code § 552.101. This exception also protects the individual rights of privacy of the persons working within a governmental body, and governmental bodies are granted standing to assert their rights. *See IFS*, 540 S.W.2d at 678. While the constitutional and common law rights to privacy have similarities, they require different legal analyses. We therefore address LISD's constitutional and common law privacy arguments in turn.

### 1. *Constitutional Right of Privacy*

The Texas Supreme Court has recognized a constitutional right of "disclosural privacy" or, in other words, the "right to control information" regarding certain "fundamental 'zones of privacy.'" *IFS*, 540 S.W.2d at 678–79 (citing "line of decisions" from United States Supreme Court and holding that there is right "to prevent unlimited disclosure of information held by the government which, although collected pursuant to a valid governmental objective, pertains to activities and experiences with those zones of privacy"). These "zones of privacy" are limited to those rights which are "fundamental" or "[i]mplicit in the concept of ordered liberty," and include "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Id.* at 680; *see Whalen v. Roe*, 429 U.S. 589, 600 n.26 (1977); *Paul v. Davis*, 424 U.S. 693, 713 (1976). But "the State's right to make available for public inspection information pertaining to an individual does not conflict with the individual's constitutional right of privacy

14

unless the State's action restricts his freedom in a sphere recognized to be within a zone of privacy protected by the Constitution." *IFS*, 540 S.W.2d at 680–81.

The Document includes complaints regarding workplace harassment and discrimination, employee romantic affairs, and CPS investigations. As an initial matter, we observe that LISD does not identify any specific zone or zones of privacy for protection. And, in any event, we have found neither controlling authority nor factual basis to conclude that any information contained in the Complaints Document implicates the "zones of privacy" or fundamental rights that the constitutional right to privacy protects.[4] *See id*. at 681. Workplace harassment and discrimination, whether founded or unfounded, generally do not involve constitutional rights of the alleged perpetrator that are within the protections of any recognized zone of privacy. *See Davis*, 424 U.S. at 713–14 (stating that "[r]espondent's case, however, comes within none of these areas" and declining to find right of privacy outside previously enumerated zones of privacy); *IFS*, 540 S.W.2d at 681 (holding that requested workers' compensation information, including "the claimant, the nature of his injuries, his employer and his attorney," did not fall within any recognized zone of privacy and therefore must be disclosed). Although the Document also references the fact that there was a CPS investigation, the Document does not address, identify, or implicate the fundamental liberty interest of "child rearing"—*i.e.*, "the care, custody, and control of children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *see, e.g.*, *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 590–91 (6th Cir. 2008) (noting that children services' investigation did not implicate

---

[4] We note that the identifying information of the complainants, which may include the victims of harassment and discrimination, is already protected under the Attorney General's ruling. *See* Tex. Att'y Gen. OR2015-16865 at 8.

15

fundamental right of child rearing when parent did not lose care, custody, or control of child and therefore there was no constitutional invasion of privacy claim). Finally, consistent with precedent from the Texas Supreme Court and this Court, the additional reference to allegations of an affair between school employees is not entitled to constitutional protection of privacy. *See City of Sherman v. Henry*, 928 S.W.2d 464, 471–74 (Tex. 1996) (holding that United States and Texas Constitutions do not provide right of privacy "to maintain a sexual relationship with the spouse of someone else"); *Ex Parte Morales*, 212 S.W.3d 483, 491–93 (Tex. App.—Austin 2006, pet. ref'd) (rejecting claim that adult consensual sexual activity is fundamental right and noting that United States Supreme Court distinguishes constitutionally protected rights of conception, procreation, and child rearing from adult sexual conduct to which it has not extended right of privacy); *see also Ramirez v. State*, 557 S.W.3d 717, 719–21 (Tex. App.—Corpus Christi 2018, pet. ref'd) (collecting cases and holding "consensual sex is not a fundamental right").[5] Accordingly, on the record before us, the information in the Complaints Document is not protected under constitutional privacy rights.

---

[5] Although controlling authority dictates our result, we acknowledge a recent split among the federal courts of appeals as to whether there is a constitutional right to privacy regarding extramarital affairs between public employees. *Compare, e.g.*, *Perez v. City of Roseville*, 882 F.3d 843, 854 (9th Cir. 2018) (noting affair between fellow public officers and holding that "[h]er extramarital sexual conduct was protected by her rights to privacy and intimate association") *with Coker v. Whittington*, 858 F.3d 304, 308 (5th Cir. 2017) (noting that case law does not provide public employees of law enforcement agencies with "constitutional rights to 'associate' with each other's spouses before formal divorce" and recent cases have not created "'rights' based on relationships that mock marriage"); *Seegmiller v. LaVerkin City*, 528 F.3d 762, 770 (10th Cir. 2008) (noting that there is no "fundamental liberty interest 'to engage in a private act of consensual sex'").

## 2. Common Law Privacy

The common law right to privacy protects information from disclosure when "(1) the information contains highly intimate or embarrassing facts the publication of which would be highly objectionable to a reasonable person, and (2) the information is not of legitimate concern to the public." *IFS*, 540 S.W.2d at 685. Importantly, however, the highly intimate or embarrassing facts must be "about a person's *private* affairs." *Id.* at 683 (emphasis added); *see* Tex. Att'y Gen. ORD-470 at 4 (1987) ("Even if these records contain highly subjective comments that are embarrassing to the principal, they are not protected . . . unless the comments contain intimate or embarrassing facts about a person's <u>private</u> affairs."). The reason: "personal information about employees that does not shed light on their official actions would not further the purpose of the statute" to provide citizens with "'complete information about the affairs of government and the official acts of public officials and employees.'" *Texas Comptroller of Pub. Accounts v. Attorney Gen. of Tex.*, 354 S.W.3d 336, 346 (Tex. 2010) (quoting Tex. Gov't Code § 52.001(a)). Thus, an employee's illness from job stress, for example, relates to a person's private affairs; in contrast, when the facts concern work conduct or job performance of public employees, it is generally not a matter of private affairs, but of public concern. *See* Tex. Att'y Gen. ORD-470 at 4 (1987) (noting that hives from job stress is not of public concern, but that "[a] public employee's job performance does not generally constitute private affairs"); *see also* Tex. Att'y Gen. ORD-455 at 9 (1987).

LISD asserts that the Document "contain[s] sensitive information" and the details "may be embarrassing for the persons involved." But the summary judgment record fails to demonstrate that the information involves matters relating to a "person's private affairs." *IFS*,

17

540 S.W.2d at 683.[6]  Matters of workplace harassment, discrimination, and policy violations in a governmental body are, by their very nature, generally not a "person's private affairs."[7]  And McSpadden's affidavit belies the claim that the complaints concern merely private affairs by stating that "[o]nly those investigations that may have administrative or legal consequences are included in the list."  In sum, LISD failed to meet its burden of identifying "highly intimate or embarrassing facts" that relate to a "person's private affairs."

Nevertheless, LISD also argues that because "[s]ome of the investigations concluded that the allegations were unfounded," the identity of the employees against whom the allegations were made and the nature of the complaints should be protected under common law privacy

---

[6] We acknowledge that case law may support a privacy exception as a matter of a "person's private affairs" for the victim's identities and highly personal identifying information in instances of sexual assault and mental abuse in the workplace.  *See, e.g.*, *Industrial Found. of the S. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 683 (Tex. 1976) (*IFS*); *Abbott v. Dallas Area Rapid Transit*, 410 S.W.3d 876, 881–82 (Tex. App.—Austin 2013, no pet.) (*DART*) (discussing *Morales v. Ellen*, 840 S.W.2d 519 (Tex. App.—El Paso 1992, writ denied)); *Hubert v. Hart-Hanks Tex. Newspapers, Inc.*, 652 S.W.2d 546, 551 (Tex. App.—Austin 1983, writ ref'd n.r.e.).  But here the AG has already provided such protection by excepting from required public disclosure the informers' identities under section 552.135.  *See* Tex. Att'y Gen. OR2015-16865 at 8 (citing Tex. Gov't Code § 552.135).

[7] To the extent a CPS investigation and a romantic affair between public employees can be construed as personal private affairs, the Document indicates that these facts constituted the circumstances of the employees' resignations.  The circumstances of an employee's resignation are generally a matter of legitimate concern to the public and therefore not entitled to privacy under common law, even if they are highly intimate or embarrassing.  *See* Tex. Att'y Gen. ORD-444 at 4–5 (1986) (noting that "in the usual instance, the circumstances of an employee's resignation are available to the public" and "the public has a legitimate interest in knowing the reasons for the dismissal, demotion, or promotion of a public employee"); *see also Gonzalez v. City of Laredo*, No. 04-95-00353-CV, 1997 WL 136505, at *11 (Tex. App.—San Antonio Mar. 26, 1997, writ denied) (mem. op., not designated for publication) ("The scope of employee privacy under section 552.101 is narrow, and does not except information from disclosure merely because it may embarrass the public employee or the governmental entity." (citing Tex. Att'y Gen. ORD-316 (1982))).

principles. Relying upon an AG decision from the 1980s, LISD claims that the unfounded allegations could mislead the public and allow vague allegations to be misconstrued as factual conclusions—*i.e.*, by placing the employee in a false light. But the Texas Supreme Court has rejected the "false light" tort upon which the AG relied in that opinion, and we therefore find this rationale unpersuasive. *Compare* Tex. Att'y Gen. ORD-308 at 2 (1982) ("In our opinion, the supreme court would, in an appropriate instance, apply the 'false light' privacy standard to information requested under the [PIA]."), *with Cain v. Hearst Corp.*, 878 S.W.2d 577, 584 (Tex. 1994) ("[W]e expressly decline to recognize the tort of false light").

LISD also cites *American Civil Liberties Union of Mississippi, Inc. v. State of Mississippi*, for the proposition that unsubstantiated allegations of "homosexuality, child molestation, illegitimate births, and sexual promiscuity" are entitled to privacy protection. 911 F.2d 1066, 1070 (5th Cir. 1990) (*ACLUM*). LISD seeks to extend this holding to the information in the Document regarding putative "unfounded" "allegations of inappropriate sexual comments and conduct and allegations of extramarital affairs." But in *ACLUM*, the district court found that most of the information at issue was "gather[ed], compil[ed], or maintain[ed] . . . in violation of constitutional privacy rights" and the litigants did not dispute this finding. *Id.* at 1069–70. Thus, it would naturally follow that privacy rights should generally prevent a governmental agency from disclosing information gathered in violation of constitutional privacy rights, unless the information is of a legitimate concern to the public. *See id.* at 1070 (noting "the privacy plaintiffs undeniably have an interest in restricting the disclosure of the information in the files"). Here, in contrast, there is no dispute that the information was properly gathered, compiled, or maintained, and we therefore find *ACLUM* distinguishable from the facts at

19

hand. *See, e.g.*, *Wyatt v. Fletcher*, 718 F.3d 496, 508 (5th Cir. 2013) (distinguishing *ACLUM* by noting "unlike the facts in [*ACLUM*], the government here was not illegally and secretly collecting information in order to do harm to private citizens"). In short, LISD has not identified authority, nor have we found any, that provides common law privacy protection to individuals against whom allegations are made solely because the allegations might be unfounded.

Accordingly, we conclude that LISD did not meet its burden of establishing the first prong of the *IFS* test that the information would disclose highly intimate or embarrassing facts of a person's *private* affairs.[8] Based on the record before us, we therefore hold that the trial court did not err in concluding that section 552.101 does not apply to the Complaints Document. We overrule LISD's third issue.

## C. Section 552.103 Exception

In its fourth issue, LISD argues that the district court erred by not applying section 552.103 to except the Complaints Document from required public disclosure. Section 552.103 provides an exception from required disclosure for information "relating to litigation of a civil or criminal nature to which . . . a political subdivision is or may be a party" but "only if litigation is

---

[8] Even if the information had included highly intimate or embarrassing facts of a person's private affairs, we note that the information at issue may be of legitimate concern to the public. The Complaints Document includes information concerning the conduct of public school employees—important matters of natural concern to parents and other members of the public. *See City of San Antonio v. Texas Att'y Gen.*, 851 S.W.2d 946, 950 (Tex. App.—Austin 1993, writ denied) (stating that "legitimacy of public interest" in how public officers perform their duties "is not in doubt"); *see also DART*, 410 S.W.3d at 882 (observing, without reaching second prong of *IFS*, that information at issue—names, positions, and hire dates in connection with investigation of racial discrimination claims—"may be of legitimate concern to the public").

pending or reasonably anticipated on the date that the requestor applies" for the disclosure of the information. Tex. Gov't Code § 552.103(a), (c).

LISD does not identify any pending litigation; instead it argues that section 552.103 protects the Document because it contains information that is related to litigation to which LISD "may be a party." However, whether LISD "may be a party" to some theoretical potential litigation is not determinative. As we recently noted, "[l]itigation cannot be regarded as 'reasonably anticipated' unless there is more than the 'mere chance' of it—unless, in other words, we have concrete evidence showing that the claim that litigation may ensue is more than mere conjecture." *B.W.B. v. Eanes Indep. Sch. Dist.*, No. 03-16-00710-CV, 2018 WL 454783, at *6 (Tex. App.—Austin Jan. 10, 2018, no pet.) (mem. op.) (quoting Tex. Att'y Gen. ORD-452 (1986)). The summary judgment record does not contain any concrete evidence showing that there was any litigation reasonably anticipated at the time of the PIA request.[9] Rather, the record reflects mere conjecture regarding the possibility of litigation. Thus, the district court did not err in concluding that section 552.103's exception does not apply to the Document. We therefore overrule LISD's fourth issue.

---

[9] LISD does cite its letter to the AG, in which it asserts that LISD "has engaged in settlement negotiations or confidential agreements with [certain] individuals" that are listed in the Complaints Document. But LISD failed to identify when these events occurred to support its position that litigation was reasonably anticipated on the date it received the PIA request. If the settlement negotiations or agreements were completed at the time of the PIA request, any reasonable anticipation of litigation would be negated. *See Thomas v. Cornyn*, 71 S.W.3d 473, 487 (Tex. App.—Austin 2002, no pet.) (noting in approval that "[t]he attorney general has interpreted section 552.103 as a *temporary* exception that no longer applies once the case has been dismissed, settled, or finally resolved" (citing Tex. Att'y Gen. ORD-647 (1996))).

## D. Section 552.107 Exception

In its fifth issue, LISD asserts that the Complaints Document is an attorney-client privileged communication and is therefore excepted from required public disclosure under section 552.107, which provides an exception for information protected under Texas Rule of Evidence 503. *See* Tex. Gov't Code § 552.107(1); *Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 332–33 (Tex. App.—Austin 2000, pet. denied) (applying Rule 503(b) to school district's request for exception under section 552.107). Rule 503 protects "confidential communication[s] made to facilitate the rendition of professional legal services to the client" between the lawyer and client and among their representatives. Tex. R. Evid. 503(b)(1); *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 49–50 (Tex. 2012) (orig. proceeding) ("Rule 503(b) protects not only confidential communications between the lawyer and client, but also the discourse among their representatives.").

While LISD offers several explanations for the Complaints Document's creation, the summary judgment evidence did not show that the Document was communicated between privileged parties that would be protected under Rule 503. In her affidavit, McSpadden stated that the Document was a way for LISD to track issues with "administrative and legal consequences" and that it was "shared within [LISD]'s Human resources management staff" and "used by [McSpadden] to consult with legal counsel." But McSpadden did not assert that the Document was created to transmit information to LISD's legal counsel or that it was communicated to LISD's counsel. And although Rule 503(b) protects communications between the client's representatives when made to facilitate the rendition of professional legal services to the client, McSpadden did not identify which human resources staff members with whom she shared the Document, whether those staff members constitute

22

representatives such that the communications would be privileged, and whether the communications were received by those unidentified staff members for purposes of facilitating the rendition of professional legal services. *See* Tex. R. Evid. 503(a)(2), (b)(1)(D).

Because the record does not reflect that the Document was a communication between Rule 503(b) privileged parties, LISD has failed to demonstrate it is protected by the attorney-client privilege. *See In re Bloomfield Mfg. Co.*, 977 S.W.2d 389, 392 (Tex. App.—San Antonio 1998, orig. proceeding) ("Relators have offered no proof that the database was a communication, and therefore they have not offered proof that the database is protected by the attorney-client privilege.").[10] We therefore hold that the district court did not err in concluding that section 552.107 did not exempt the Complaints Document from required public disclosure and overrule LISD's fifth issue.

## E. Summary Judgment

As cross-movants for summary judgment, both parties bore the burden of establishing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. *AISD*, 37 S.W.3d at 163. Whether an exception to disclosure applies to information otherwise subject to the PIA is a question of law. *Id.* As has been shown above, we find the AG's arguments persuasive and have answered this question of law regarding LISD's asserted disclosure exceptions in the negative. The AG has therefore met its burden of establishing that it is entitled to summary

---

[10] LISD also appears to argue that the Document contains information from confidential communications because McSpadden's affidavit states: "In most cases, I consult with the District's external counsel or the District's general counsel to determine if an investigation should be included in the worksheet." But McSpadden does not identify what information included in the Document was derived from those consultations or which of the listed cases in the Document she consulted with counsel.

judgment as a matter of law; LISD, on the other hand, has not met its burden as a cross-movant for summary judgment nor has it raised a genuine fact issue in response to the AG's motion.

## V. CONCLUSION

Accordingly, we affirm the district court's final judgment, granting the AG's motion for summary judgment and denying LISD's motion.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   December 14, 2018